UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARRIN LAPINE,

                    Petitioner,                          Case Number 17-10865
                                                         Honorable David M. Lawson
v.

JOSEPH BARRETT,

                    Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Darrin LaPine was sentenced to a three-to-fifteen-year prison term for aggravated domestic violence involving the brutal beating of his ex-wife. The Michigan Parole Board admitted him to parole in March 2015, but it later revoked it because LaPine failed to fulfill a special condition requiring him to complete a Violence Prevention Program offered at the Detroit Reentry Center. In his petition for a writ of habeas corpus filed under 28 U.S.C. § 2241, LaPine challenges the procedures used by the Michigan Department of Corrections (MDOC) that resulted in the parole revocation decision. The state courts rejected his claims in decisions that faithfully applied federal law. The petition will be denied.

I.

In 2012, LaPine pleaded *nolo contendere* to aggravated domestic violence, Mich. Comp. Laws § 750.81.a(3). He was sentenced to 3 to 15 years imprisonment and granted paroled on March 19, 2015. One of his parole conditions was the completion of the Violence Prevention Program (VPP) at the Detroit Reentry Center (DRC). Apparently, that program had a waiting list, and LaPine was added to it. However, before he made it to the top of the list, prison officials removed him when he received a major misconduct conviction for gouging the eyes and biting the

cheek of another inmate, conduct likely inconsistent with the VPP.  On July 15, 2015, the parole board revoked LaPine's parole because he failed to complete the VPP program and sent him back to prison.  LaPine pleaded guilty to the violation, but he says that he was coerced into doing so.

LaPine filed a complaint for habeas corpus in the Jackson County, Michigan circuit court challenging the parole revocation.  That was denied.  *Lapine v. Barrett,* No. 15-2466-AH (Jackson Cnty. Cir. Ct. Aug. 19, 2015).  He filed a second complaint for a writ of habeas corpus in that court, which again was denied.  *Lapine v. Barrett,* No. 15-2466-AH (Jackson Cnty. Cir. Ct. Sept. 11, 2015).  LaPine then filed a complaint in the Michigan Court of Appeals, which was likewise denied, and the Michigan Supreme Court denied leave to appeal.  *Lapine v. Bellamy Creek Corr. Facility Warden, Parole Bd., and Dep't of Corr.*, No. 332493 (Mich. Ct. App. May 25, 2016) *lv. den.* 500 Mich. 858, 884 N.W.2d 294 (2016).

LaPine's petition in this Court for a writ of habeas corpus asserts eight grounds.  He contends that (1) his liberty interests were violated when he was paroled and then placed in another facility with a higher security level; (2) his due process rights were violated when he was ordered to take the VPP and then not placed in the program and he completed a similar program when he was in the county jail; (3) the MDOC violated his rights when it wrote a "bogus" misconduct report; (4) the MDOC violated its Policy Directive when it both disciplined him and revoked his parole for the same conduct; (5) an MDOC representative violated his due process rights by issuing a parole violation charge without probable cause and failed to give written notice of the charge; (6) the MDOC adjudicator at the preliminary hearing was not a neutral person, refused to grant an adjournment of the hearing, and committed other procedural violations; (7) another MDOC representative destroyed forms LaPine signed that reflected he waived his right to a hearing under

"Duress, Coercion Threat, and Force"; and (8) his due process rights were violated when the Parole Board continued his prison sentence for twelve months without a hearing or an attorney.

The respondent contends that none of these claims has merit and asks that the petition be denied.

II.

LaPine brought his petition under 28 U.S.C. § 2241, which does not subject a petitioner to the rigors of deferential review found in 28 U.S.C. § 2254. *Phillips v. Ct. of Common Pleas, Hamilton Cty., Ohio*, 668 F.3d 804, 810 (6th Cir. 2012). However, he is a state prisoner, and ordinarily section 2254 "is the 'exclusive vehicle' of habeas relief for prisoners in custody under a state judgment." *Saulsberry v. Lee*, 937 F.3d 644, 647 (6th Cir. 2019). There is no question that LaPine is "in custody pursuant to the judgment of a State court." 28 U.S.C. § 2254(a). Therefore, he must "travel down the § 2254 road," complete with that statute's command to review state court decisions with the utmost deference. *Saulsberry*, 937 F.3d at 647.

Under that statute, if a claim was adjudicated on the merits in state court, a federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007) (citing 28 U.S.C. § 2254(e)(1)).

"Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotation marks and citations omitted).  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103, (2011).  The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review.  Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (quotation marks omitted)).  The AEDPA imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010).  Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

A.

LaPine first argues that his liberty interests were violated when the MDOC granted him parole but then ordered him placed another facility that apparently had higher security level.  But the parole board and the MDOC enjoy "wide discretion in fashioning appropriate conditions of parole." *Preston v. Piggman*, 496 F.2d 270, 275 (6th Cir. 1974).  That discretion is not unlimited; restrictions may not be "arbitrary or unreasonable." *Ibid.*  However, LaPine has not shown that placement at the DRC so he could complete the VPP was either.

He is not entitled to habeas relief on this ground.

- 4 -

B.

LaPine also complains that he was treated unfairly when the parole board ordered him to take the VPP and then did not placed him in the program.  But that does not tell the whole story. LaPine was on a waitlist for the program when he obtained a major misconduct charge for the assault on another inmate.  That made him ineligible for the VPP.  The petitioner was denied access due to his own misconduct.  No due process violation occurred under those circumstances.

C.

LaPine also takes issue with the misconduct report itself, labeling it "bogus."  The misconduct consisted of an assault on his cellmate.  LaPine's version was that his cellmate was injured during an altercation with gang members and that LaPine was "partly involved" but tried to help him.  LaPine contends that he had no hearing on this misconduct, and the guilty finding was used as the basis to disqualify him from the VPP, which in turn caused the parole violation.

The assault victim, another parolee, had a different version of the incident.  His statement indicated that during a fight, LaPine grabbed him from behind, used his fingers to gouge the victim's eyes, and after they both fell on the floor LaPine bit him on the cheek.  It is not clear from the record whether there ever was a hearing on that misconduct charge.  But what is clear is that such violent acts will disqualify an inmate from the TPP, which is why LaPine was not allowed into the program.  His parole was not revoked for the violent misconduct; it was revoked because LaPine did not complete the TPP, which he admitted.

There is no basis to issue a writ on this ground.

D.

LaPine next argues that the MDOC violated its Policy Directive when it both disciplined him and revoked his parole for the same conduct.  He filed a grievance over alleged violations and

- 5 -

pursued it through the MDOC's final stage, where it was rejected. It appears that the prison authorities drew a distinction between the misconduct violation and the parole revocation, noting that the latter was not due to the conduct that precipitated the major misconduct ticket. Instead, the parole was revoked for failing to fulfill the TPP condition.

LaPine presented this claim to the state courts. The circuit judge rejected it without discussion, stating only that there were no "radical defects in the judgment of proceedings." He raised the same issues in a complaint for mandamus that he filed in the Michigan Court of Appeals, but that complaint was rejected because he did not pay filing fees.

It is difficult to discern a federal claim lurking in this issue, which is fatal to LaPine's argument. Referencing 28 U.S.C. § 2254(a), the Sixth Circuit explained that "[t]he phrase 'in violation of the Constitution or laws or treaties of the United States' has an equally straightforward meaning. A petitioner must claim that his custody violates federal law, not state law, not some other source of law." *Bailey v. Wainwright*, 951 F.3d 343, 346 (6th Cir. 2020) (citing *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (per curiam)). Violation of a department policy directive will not furnish grounds for federal habeas relief.

E.

The remainder of LaPine's claims address alleged procedural irregularities in the parole revocation process itself, which, he says, infringed his rights under the Due Process Clause.

"If state law entitles an inmate to release on parole, . . . that entitlement is a liberty interest which is not to be taken away without due process." *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991). The Sixth Circuit has held, however, that Michigan's parole system creates "no 'legitimate claim of entitlement to' parole, and thus no liberty interest in parole." *Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011) (quoting *Greenholtz v.*

*Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979)). LaPine should be familiar with that concept. *See Lapine v. Michigan Parole Bd.*, No. 18-1860, 2018 WL 7141240, at *1 (6th Cir. Nov. 29, 2018).

Nonetheless, once parole is granted, a parolee has a liberty interest that entitles him to some due process protection in the parole revocation process. *See Morrissey v. Brewer,* 408 U.S. 471, 481-84 (1972). For instance, promptly after arrest for an alleged parole violation, the parolee must have a preliminary determination of probable cause to justify holding him for further proceedings. *Id.* at 485-87. Thereafter, the parolee must have written notice of the violation, disclosure of the evidence, the opportunity to be heard and contest the case (including confrontation rights), a neutral arbiter, and written findings that explain the decision. *Id.* at 489. The determination need not convince the arbiter beyond a reasonable doubt; reasonable grounds will do. *Id.* at 490.

LaPine contends that there was no probable cause to bring parole violation charges against him and that he did not receive adequate notice of the charges. He says that Anitra Harris, the Parole Board Examiner, was not neutral, and she unreasonably refused his request for an adjournment of the parole revocation hearing, failed to make a record of the proceedings or official rulings, placed false statements on the record, and produced no evidence that the petitioner failed to complete the VPP.

Most of these arguments fade away in light of the fact that LaPine waived his right to a hearing and admitted the violation. The record indicates that a parole board hearing examiner held a preliminary hearing on this violation on June 8, 2015, at which time the examiner found that probable cause was established. LaPine then was advised of his right to a revocation hearing and his rights associated with such a hearing.

Instead of requesting a revocation hearing, LaPine pleaded guilty to failing to comply with the required VPP programming.  He admitted that he violated special condition 3.4 of his parole and waived his right to a hearing on that count. He also waived his other rights associated with a parole revocation hearing, including the right to the assistance of counsel, to testify, to present relevant evidence, to confront and cross-examine adverse witnesses, and to present any relevant evidence that would mitigate the charges.  The waiver LaPine signed also stated: "I understand that the Parole & Commutation Board will consider my signature below as an admission to a parole violation and will make a final determination which may range from a return to parole to a continuance."  The recommendation was to continue LaPine's incarceration, which the parole board adopted on July 15, 2015.

A parolee can waive his right to a formal parole revocation hearing and all of the attendant safeguards as long as he knowingly and intelligently does so.  *See Preston*, 496 F.2d at 274 (citing *Brady v. United States*, 397 U.S. 742, 748 (1970)).  There is no evidence that LaPine did not understand his rights, that he was tricked into waiving them, or that his waiver was not intelligently made.

LaPine's claim that he never received notice of the parole violation charges against him is belied by the record, which shows that he was given notice of the charges against him but refused to sign.

The argument that Parole Board Examiner Anitra Harris was not neutral, but instead was biased against him, likewise is unsupported.  "[T]he requirements of neutrality and detachment are satisfied where 'an evaluation of whether reasonable cause exists to believe that conditions of parole have been violated is made by someone such as a parole officer other than the one who has made the report of parole violations or has recommended revocation.'"  *Juarez v. Renico,* 149 F.

Supp. 2d 319, 323 (E.D. Mich. 2001) (citing *Morrissey*, 408 U.S. at 486).  LaPine has not furnished any evidence that the hearing examiner was involved at an earlier stage of the case or otherwise harbored any bias against him.

LaPine also argues that another MDOC representative, Cynthia Vanlake, destroyed forms LaPine signed that reflected he waived his right to a hearing under "Duress, Coercion Threat, and Force" and threatened a continuance of custody if he did not sign a waiver of his right to a hearing and his rights associated with such a hearing.  The problem with that argument is that it is just that: an argument.  LaPine has not offered any evidence of any such conduct here or in the state court. Therefore, the state courts' rejection of that claim cannot be found to be contrary to or an unreasonable application of Supreme Court precedent.

F.

LaPine's final claim is that his rights were violated when the Michigan Parole Board issued a 12-month continuance (that is, a return to prison) without conducting a hearing or providing counsel to him.  But no constitutional rights were violated just because the parolee suffered an adverse result, when all the constitutionally required procedures were afforded to him.   As discussed above, the parole board's decision was procedurally sound.

III.

None of the petitioner's claims presents a basis to issue a writ of habeas corpus under 28 U.S.C. § 2254(d).  The state courts' decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts.  The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   November 5, 2020